THE PEOPLE ex rel. THE NEW YORK ELECTRIC LINES COMPANY, Appellant, v. ROLLIN M. SQUIRE, as Commissioner, Respondent.

The act of 1885 (Chap. 499, Laws of 1885), entitled "an act providing for placing electrical conductors under ground in cities of this state and for commissioners of electrical subways" is not violative of the provision of the State Constitution (Art. 3, § 16), declaring that no local or private bill shall embrace more than one subject, and that shall be expressed in the title. Said act is not a local or private bill within the meaning of the constitutional provision, and it embraces but one subject which is fairly expressed in the title.

A law, general in its terms, regulating the operation of all corporations of a certain kind in cities of a certain class is not made a local or private bill by the fact that such companies are all located in, or that the specified class of cities include but one or a limited number of the cities of the state.

The fact that said act (§ 2) charges the board of commissioners of electrical subways, thereby directed to be appointed, with the duty of enforcing the provisions of the act of 1884 (Chap. 534, Laws of 1884), and declares that the said act of 1884 is thereby amended so as to conform to the provisions of the act of 1885, does not render the latter act obnoxious to the constitutional provision (Art. 3, § 17), declaring that no act shall be passed providing that any existing law shall be deemed part thereof or applicable thereto, "except by inserting it in such act."

The fact that said act of 1885 directs that the costs and expenses of each board of commissioners appointed under it shall be assessed upon the companies "operating electrical conductors in the city," does not render the act void as imposing a tax upon the companies specified without consent, hearing or benefit, in violation of the Constitution. (Art. 1, § 6.) No tax is imposed within the meaning of the Constitution.

*It seems* that, conceding said provision in relation to assessments does impose a tax, it does not necessarily invalidate the other provisions of the statute.

The said act of 1885, so far as it affects corporations organized before its passage, is not obnoxious to the constitutional prohibition against laws

impairing the obligations of contracts; it does not annul, destroy, or materially impair or restrict any franchises or contract rights previously secured, but seeks to regulate and control their exercise, so that they shall cease to constitute a public nuisance.

Regulations of the character provided for in said acts are strictly police regulations, such as are within the legitimate authority of the legislature to delegate the exercise thereof to municipal corporations.

The right to exercise this police power is a governmental function which cannot be alienated, surrendered or abridged by the legislature by any grant, contract or delegation whatsoever.

The relator was incorporated under the general act of 1848 (Chap. 265, Laws of 1848), for the purpose of constructing and maintaining electric conductors to be placed under the streets in the city of New York. It received from the common council of the said city, by virtue of the power conferred on that body by the act of 1879 (Chap. 397, Laws of 1879), permission to construct conduits and lay wires in certain streets, the work to be done under the supervision of the commissioner of public works. In 1883 the relator filed with the county clerk certain maps, etc., as required by the ordinance, and in 1886 made application to the department of public works for permission to make excavations in certain streets in order to lay its wires and conductors, which was refused on the ground that the relator had not obtained the approval of the subway commissioners appointed pursuant to said act of 1885, as required by said act. In proceedings to obtain a peremptory *mandamus* requiring said commissioners to grant the permit, *held,* that the application for the writ was properly denied.

(Submitted November 29, 1887; decided January 17, 1888.)

Appeal from order of the General Term of the Court of Common Pleas, in and for the city and county of New York, made February 7, 1887, which affirmed an order of Special Term, denying an application for a peremptory *mandamus* directing defendant, as commissioner of public works in and for the city of New York, to grant to the petitioner a written permit to make excavations in certain streets of the city of New York "for the purpose of laying the wires on their conductors of electricity."

The material facts are stated in the opinion.

*David Leventritt* for appellant. The subway act of June 13, 1885, as amended by chapter 503 Laws of 1886, is a local bill and violates section 16, article 3 of the Constitution of

this state. (*People ex rel.* v. *Albertson*, 55 N. Y. 55; *Ohio ex rel.* v. *Covington*, 29 Ohio, 110; *Dist. Court Case*, 34 Ohio, 441; *People ex rel.* v. *Allen*, 42 N. Y. 404; *Devine* v. *Com'rs, etc.*, 84 Ill. 590; *State ex rel.* v. *The Judges*, 21 Ohio, 11; 31 id. 607; *People* v. *Hills*, 35 N. Y. 449.) These acts of 1885 and 1886 are unconstitutional, because they levy a tax upon telegraph companies without equality and without consent, hearing or benefit. (*Embury* v. *Conner*, 3 N. Y. 511; *Stuart* v. *Palmer*, 74 id. 183; *Sullivan* v. *City of Oneida*, 61 Ill. 248; Const. art. 1, §§ 6, 9; U. S. Const, 14th amd't; *People ex rel.* v. *Hayden*, 50 N. Y. 530, 533; 82 id. 196; *People ex rel.* v. *B'd Suprs. Kings Co.*, 52 id. 556.) By its incorporation under the acts of the legislature, particularly chapter 397 of the Laws of 1879, and its further contract with the city, the relator acquired vested rights before the passage of the subway act of 1885. (*Chenango Bridge Co.* v. *Binghamton Bridge Co.*, 27 N. Y. 91; *Fletcher* v. *Peck*, 6 Cranch, 87; *Dart. Col.* v. *Woodward*, 4 Wheat. 518; *Green* v. *Beddle*, 8 id. 2; *Gordon* v. *The Appeal Tax Const.*, 3 How. [U. S.]; *Orleans* v. *Lottery Co.*, 119 U. S. 265.) The relator's contract with the city was complete upon its acceptance of the franchise to lay underground conductors and binding itself to the conditions, restrictions on payments there agreed to. (*Coleman* v. *Eyre*, 45 N. Y. 39; Story on Con. § 568; Pollock on Con. [Wald's] 176; *Ches. & O. C. Co., etc.* v. *B. & O. R. R. Co.*, 4 Gill & J. [Md.] 1, 144, 150; *Edgeware Highway Board* v. *Harrow Gas Co.*, L. R. 10 Q. B. 92; *Milhau* v. *Sharp*, 27 N. Y. 611; Dillon on Corp. [3d ed.] § 308; *People* v. *Sturtevant*, 9 N. Y. 273; *Mayor, etc.*, v. *Second Ave. R. R. Co.*, 32 id. 261; *Brooklyn* v. *City R. R. Co.*, 47 id. 476; *Matthew's Admrs.* v. *Meek*, 23 Ohio, 292; *Philpot* v. *Guninger*, 14 Wall. 570; *Pac. R. R. Co.* v. *Leavenworth City*, 1 Dillon, 393.) The legislature, by the subway act of 1885, did not intend to make it retroactive so as to apply to affect the relator's vested rights. (*Murray* v. *N. Y. C. R. R. Co.*, 3 Abb. [Ct. Ap.] 341; *Tracy* v. *Troy & B. R. R. Co.*, 38 N. Y. 433; *Farmers' Bank* v. *Hale*, 59

id 53; *Dask* v. *Van Kleek*, 7 John. 477; *Johnson* v. *Burrill*, 2 Hill, 238; *Butler* v. *Palmer*, 1 id. 325; *McMannis* v. *Butler*, 49 Barb. 585; *Ganson* v. *City of Buffalo*, 1 Keyes, 460; *Berley* v. *Rampacker*, 5 Duer, 188; *Conway* v. *Cable*, 37 Illinois, 82; *Deininger* v. *McConnell*, 41 id. 228; *People ex rel.* v. *Palmer*, 52 N. Y. 84; *U. S.* v. *Central P. R. R. Co.*, 118 U. S. 235; *Sinking Fund Cases*, 99 id. 700; *Close* v. *Glenwood Cemetery*, 107 id. 466.) If the legislature intended to apply the act of 1885 to the relator, said act is to that extent unconstitutional as impairing the obligation of contracts prohibited by the Constitution of the United States. (*Donalds* v. *State of New York*, 86 N. Y. 36; *Chenango Bridge Co.* v. *Binghamton Bridge Co.*, 27 id. 87; *Woolever* v. *Stewart*, 36 Ohio, 146; *Hunter* v. *Hatch*, 45 Ill. 184; *Parmlee* v. *Lawrence*, 44 id. 406; *People* v. *Secretary of State*, 58 id. 90; *People ex rel.* v. *Otis*, 90 N. Y. 48; *Ogden* v. *Saunders*, 12 Wheat. 256; *New Orleans* v. *Louisiana Lottery Co.*, U. S. Sup. Ct. Dec. 6; *Matter Cable R. Co.*, 104 N. Y. 1; *Broadway R. R. Case*, Alb. Special Term Dec. 23, 1886; *Bronson* v. *Kinsey*, 1 How. [U. S.] 317, 318; *Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122; *Robinson* v. *Magee*, 9 Cal. 81: *McCracken* v. *Haywood*, 2 How. [U. S.] 614; *McCauley* v. *Brooks*, 16 Cal. 37.) The police power does not and was not intended by the legislature, under the subway act of 1885, to apply to underground wires, but to the nuisance, obstruction and danger of existing poles and wires overhead. (*Chy Lung* v. *Freeman*, 92 U. S. 275; *Morgan* v. *La.*, 118 U. S. 455: *Gibbons* v. *Ogden*, 9 Wheat. 210; *Soon Hing* v. *Crowley*, 113 U. S. 703; *N. O. Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 661, 674; *Wynehamer* v. *People*, 13 N. Y. 378; *State* v. *Walruff*, 26 Fed. Rep. 178; *Mahin* v. *Pfeiffer*, 27 id. 892: *People* v. *Platt*, 17 Johns. 195; *People* v. *Jacobs*, 98 N. Y. 99, 107.) The relator's work and business, and the means and manner of carrying it forward, not being a nuisance in itself, nor of such a nature as to create a nuisance, the right to its property and franchise privileges, and the pursuit of its business is funda-

mental. (Const. art. 1, § 6; *Yick Wo* v. *Hopkins*, 118 U. S. 370; *Ex parte Virginia*, 100 id. 339; *Live Stock Assn.* v. *Crescent City*, 1 Abb. [U. S.] 398; *Slaughter House Cases*, 16 Wall. 106; *Garfield* v. *Caryell* 4 Wash C. C. 380; *Matter of Jacobs*, 98 N. Y. 99; *Bertholf* v. *O'Reilly*, 74 id. 515; *People* v. *Marx*, 99 id. 377; *Kessinger* v. *Hinkhouse*, 27 Fed. Rep. 883.)

*D. J. Dean* for respondent. The privileges conferred upon the relator by the resolution of the common council are held by it subject to be affected in practice, use or operation, by any necessary police regulation in respect thereto. Such property is held subject to the power of the state to regulate and control its use in the interest of the public welfare. (*Presb. Church* v. *Mayor. etc.*, 5 Cow. 538; *Britton* v. *Mayor, etc.*, 21 How. 25; *People* v. *Morris*, 13 Wend. 325; *Thorp* v. *R. & B. R. R. Co.*, 77 Vt. 140.) The act of 1885 is not obnoxious to the constitutional objection on the ground that it is a local bill. (*N. Y. El. R. Co.*, 70 N. Y. 327; *In re Church*, 92 id. 1.) If, when any invalid provision of an act is stricken out, that which remains is complete in itself, and is capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, the act must be sustained. (*People* v. *Briggs*, 50 N. Y. 553; *In re Middletown*, 82 id. 196.)

Ruger, Ch. J. The relator was incorporated in 1882 for the purpose of "owning, constructing, using, maintaining and leasing lines of telegraph wires or other electric conductors for telegraphic and telephonic communication, and for electric illumination, to be placed under the pavements of the streets," etc., in the counties of New York and Kings. Their organization was effected under chapter 265 of the Laws of 1848, which, by a general law, authorized the formation of corporations of that character, and in 1883 it applied to and received from the common council of the city of New York, by virtue of the power conferred upon such council by chapter

397 of the Laws of 1879, permission to construct conduits and lay wires in certain streets of New York, under certain conditions named in the ordinances, which, among other things, required that such work should be performed under the control and supervision of the commissioner of public works. The relator, in 1883, also filed with the clerk of New York county certain maps, plans and tabular statements, as required by the ordinance, and proceeded to collect the material and equipments necessary to build its structures and transact its business. No further progress seems to have been made by the relator until July, 1886, when application was made by it, to the department of public works of New York for permission to open some of the streets in the city, for the purpose of laying therein its wires and conductors. This permission was refused upon the ground, that the relator had not obtained the approval of the subway commissioners of New York to its plans and construction.

This proceeding was brought to obtain a peremptory *mandamus* requiring the commissioner of public works, to grant a permit to the relator, authorizing it to excavate in the streets of the city to enable it to construct conduits, and lay electric wires and conductors therein. The application was denied at Special Term, and the General Term, upon appeal to that court, affirmed the order denying the writ. Section 1 of chapter 534 of the Laws of 1884, provides that " all telegraph, telephonic and electric light wires and cables used in any incorporated city of this State, having a population of five hundred thousand or over, shall hereafter be placed under the surface of the streets, lanes and avenues of said city." Section 2 requires that " every corporation  *  *  *  owning or controlling telegraph, telephone, electric or other wires or cables  *  *  *  shall before the 1st day of November, 1885, have the same removed from the surface of all streets or avenues in every such city of this state ; " and section 3 provides that in case the owners of such property do not comply with the provisions of the act within the time limited, the local governments of the said cities shall cause such wires, etc., to be

removed and placed under ground. These provisions do not seem to have been impaired in any material respect by the subsequent legislation of 1885 and 1886, and by express terms the act applies as well to existing companies, as those thereafter to be formed.

By chapter 499, Laws of 1885, it was provided that three persons should be appointed to constitute a board of commissioners of electrical subways in cities having a population exceeding five hundred thousand. By section 2, such boards were charged with the responsibility of enforcing the provisions of the act of 1884, and it was made their duty to cause to be removed from the surface of the streets, etc., all wires and cables used in the business of such electric companies and to put them under ground, wherever practicable, and cause them to be there operated and maintained, and said act of 1884 was declared to be amended to conform to the provisions of this act. Section 3 of said act provided that " when any company operating or intending to operate electrical conductors in any such city, shall desire or be required to place its conductors or any of them underground * * * it shall be obligatory upon such corporation to file with said board of commissioners, a map or maps, made to scale, showing the streets or avenues or other highways which are desired to be used for such purpose, and giving the general location, dimensions and course of the underground conduits desired to be constructed. Before any such conduits shall be constructed it shall be necessary to obtain the approval of said board, of said plan of construction so proposed by such company." By section 10 " all acts and parts of acts inconsistent herewith are hereby repealed."

These acts seem to have been intended to apply to all companies, and to whatever stage of their organization they may have reached. It is not claimed by the relator that it has ever filed with the board of commissioners its maps and plans as required by said act, or that it has obtained from them an approval of such maps, etc., and it is therefore clear that section 3 of the act of 1885 constitutes an insuperable objection to the relator's application, unless for some reason it be adjudged to be void for unconstitutionality.

The relator has met this question squarely, and challenges the constitutionality of the act upon several grounds, which may be summarized as follows :

1st. That it violates section 16 of article 3, in that it is a local bill and embraces more than one subject, not expressed in its title.

2d. That it violates section 17 of article 3, providing that "no act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or any part thereof, shall be applicable except by inserting it in such act."

3d. That said act levies a tax upon such companies, in that it is provided that the cost and expenses of such board of commissioners are authorized to be assessed by the comptroller of the state, when paid by him, upon the several companies operating electrical conductors in any such city of the state, which shall be required to place and operate its conductors underground.

4th. That if said act of 1885 applied to the relator, it was unconstitutional, as it impaired the rights which it had secured by virtue of the grant, from the authorities of New York to construct conduits and lay wires and conductors in the streets of that city, and its acceptance thereof.

We are of the opinion that none of the points taken by the appellant are tenable. It is convenient to consider these questions in the order in which they have been stated :

*First.* The act referred to is not subject to the condemnation expressed in section 16, article 3, for the reason that it is neither a private or local bill, nor does it embrace more than one subject. The three acts of 1884, 1885 and 1886 all relate to the same subject, viz., that of placing all electrical wires and conductors in cities exceeding five hundred thousand population, under the surface of streets, etc., subject to the control of the local authorities ; and no provision is incorporated in either of these acts which is not strictly incidental to the general object intended to be accomplished. They relate simply

to the mode and manner, in which the provisions of the several acts in relation to the location and removal of electrical wires and conductors shall be applied and enforced, and constitute but one subject of legislation.

Neither is the act a local or private one within the meaning of the section referred to. Such was the decision of this court. (*In the Matter of the N. Y. El. R. R. Co.*, 70 N. Y., 327, and *In the Matter of Church*, 92 N. Y., 1.) This act is general in its terms, applying to all cities in the state, of a certain class and to every corporation, carrying on a business requiring the use of electrical wires or conductors in such cities. That the number of such cities is limited or restricted, does not make the bill a private or local one, within the constitutional meaning and intent of these words, was expressly decided in the cases referred to.

How many companies there are to which this bill applies we have no means of determining, but the fact that a general law is passed regulating the operations of all such companies, in cities of the class referred to, does not constitute it a private or local bill, although it may happen that such companies are all located in one or more cities of the state.

*Second.* Neither do we think the act obnoxious to the objection that it incorporates in its provisions a prior act without inserting such act therein. The act is neither within the letter or spirit of the constitutional provision. There was no attempt to re-enact the law of 1884 by the law of 1885. The act of 1884 was a law by the force of its own enactment and so continues. It has never been repealed or re-enacted. The act of 1885 treats that of 1884 as a valid and existing law, and purports simply to provide methods, by which it may be more conveniently carried out and enforced. It might be better, perhaps, to have all laws relating to this subject incorporated in a single act, but I apprehend it is no objection to a law, under the Constitution, that other laws on the same subject exist in other volumes of the statutes, or that the arrangement and location of such laws are faulty, or perhaps intricate and awkward, or involve labor and trouble to determine what

in fact the law is. The object and intent of the constitutional provision was to prevent statute laws relating to one subject from being made applicable to laws passed upon another subject, through ignorance and misapprehension on the part of the legislature, and to require that all acts should contain within themselves such information as should be necessary to enable it, to act upon them intelligently and discreetly. It is obvious that it does not apply to an act purporting to amend existing laws, for in such a case no intelligent legislation could be had at all without a knowledge of the law intended to be amended. It must be presumed that the legislature is informed of the condition of a law which it is called upon to amend. It could never have been contemplated by the framers of the Constitution that any legislator would remain ignorant of the provisions of a law which it was proposed to change, or would require the provisions of such a law to be transcribed into the proposed legislation to enable him to act upon it judicious and intelligently. Such a construction would lead to innumerable repetitions of laws in the statute books and render them not only bulky and cumbersome, but confused and unintelligible almost beyond conception.

*Third.* The claim that this law is void because it imposes a tax on the companies referred to, cannot be maintained. The act of 1884 imposes the duty upon such companies to remove and cause to be laid underground, all such wires and cables as are required in their business, and there is no reason why such companies should not be subjected to the payment of all expenses, incurred in the construction of works required to carry on their own business.

This question has received a practical construction in the legislation of the state by its laws imposing upon banking and insurance corporations the expenses incurred by the government in the management and regulation of such institutions and their business operations. It has never been supposed that these laws imposed a tax within the meaning of the Constitution. A further answer to this point is found in the circumstance that even if it be admitted that the law does

impose a tax, it does not necessarily invalidate the other provisions of the statute. The comptroller of the state is required to pay these expenses in the first instance, and no question arises over the liability of the companies until they are called upon, by the comptroller, to refund to him the amount of such expenses. This provision of the statute may be eliminated from it without impairing in the least the general scheme of the act, and upon well settled principles when this can be done, it affects so much of the act only, as may be declared unconstitutional.

*Fourth.* The relator also claims that the act is obnoxious to the clause of the Constitution which forbids the enactment of any law impairing the obligation of contracts. It may be said in reference to this claim that the contract itself provides that the work of removal and replacement and of making excavations in the streets, avenues, etc., of the city by any telegraph company for the purpose of laying its wires, shall be subject to the control and supervision of the commissioners of public works, and such commissioners might well require, in the exercise of their discretion, that the locality, time, mode and manner of performing such work should be approved by the officers having the general supervision of that subject in the city, before authorizing a single company, among the many claiming such privileges, to tear up its streets and construct trenches through its various thoroughfares and avenues, at their own will and pleasure.

But we are of the opinion, for other reasons, that this legislation did not and was not intended to materially impair or restrict the enjoyment of the franchise secured by the relator. The necessity of these acts sprung out of a great evil, which, in recent times has grown up and afflicted large cities by the multiplication of rival and competing companies, organized for the purpose of distributing light, heat, water, the transportation of freight and passengers, and facilitating communication between distant points, and which require in their enterprises the occupation not only of the surface and air above the streets, but indefinite space under ground.

This evil had become so great that every large city was covered with a net work of cables and wires attached to poles, houses, buildings and elevated structures, bringing danger, inconvenience and annoyance to the public. Extensive spaces under ground were also required to lay pipes and build trenches and arches, to transact the business of the various corporations requiring them. These works not only called for great skill to harmonize the various and conflicting claims of competing companies to rights above as well as beneath the ground, but a comprehensive plan and supervision, to prevent the constant disruption of the streets and the interruption of travel. The necessity of a remedy for these public annoyances had long been felt and it finally culminated in the enactment of the several statutes referred to.

These statutes were obviously intended to restrain and control, as far as practicable, the evils alluded to, by requiring all such wires to be placed underground in such cities, and be subject to the control and supervision of local officers, who could reconcile and harmonize the claims of conflicting companies, and obviate, in some degree, the evils which had grown to be almost, if not quite, intolerable to the public. The scheme of these statutes was not to annul or destroy the contract rights of such companies, but to regulate and control their exercise. They did not purport to deny them any privileges theretofore granted, but they did require that they should be exercised with due regard to the claims of others, and in such a way that they should cease to constitute a public nuisance, and should be enjoyed in such a manner as to inconvenience and endanger the general public as little as possible.

That regulations of the character provided for in these acts are strictly police regulations, and such as no chartered rights can nullify or override, is too clear to admit of dispute. The primary and fundamental object of all public highways is to furnish a passage-way for travelers in vehicles, or on foot, through the country. (Bouvier's Institutes, § 442.) They were originally designed for the use of travelers alone.

But in the course of time and in the interest of the general prosperity and comfort of the public they have been put, especially in large cities, to numerous other uses; but such uses have always been held to be subordinate to the original design and use. Thus they have been appropriated in recent times for the reception of sewers, water pipes, gas pipes, pipes for heating and manufacturing purposes, underground railroads, trenches for wires for telegraph, telephone and other purposes, which all require in their construction the disruption of the pavements and the temporary interruption, at least, of the rights of travelers in the public highways. The due and orderly arrangement of the various and conflicting claims to privileges in the streets of large cities, would seem imperatively to require the creation of a neutral board, with controlling authority, to form a comprehensive plan by which these various enterprises may be harmonized and carried on without detriment to each other, and with due regard to the rights of the public. Such power is pre-eminently a police power, and it is within the legitimate authority of a legislature to delegate its exercise to municipal corporations.

An elementary writer has said that " the police of a state, in a comprehensive sense, embraces its system of internal regulation by which it is sought not only to preserve the public order and to prevent offenses against the state, but also to establish, for the intercourse of citizen with citizen, those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights and to insure to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with a like enjoyment of rights by others." (Cooley on Const. Limitations, 572.)

Justice Shaw said, in *Commonwealth* v. *Alger* (7 Cush. 84) that it was " a well-settled principle, growing out of the nature of well ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it shall not be injurious to the rights of the community. All property

in this commonwealth  *  *  *  is held subject to those general regulations, which are necessary to the common good and general welfare."

Ch. J. REDFIELD, in *Sharp* v. *Rutland & Burlington R. R. Co.* (27 Vt. 149), says: "This police power of the state extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the state."

The right to exercise this power cannot be alienated, surrendered or abridged by the legislature by any grant, contract or delegation whatsoever, because it constitutes the exercise of a governmental function, without which it would become powerless to protect those rights which it was especially designed to accomplish. Thus it was held in *Presbyterian Church* v. *City of New York* (5 Cow. 540), where the corporation had granted, with a covenant for quiet enjoyment, a piece of land to the plaintiff to be used for church purposes and as a cemetery, that the power of the municipal government to pass an ordinance forbidding the use of such premises as a cemetery for the interment of the dead constituted no breach of the covenant. It was said that " the defendants are a corporation, and in that capacity are authorized by their charter and by-laws to purchase and hold, sell and convey real estate in the same manner as individuals.  *  *  *, They are also clothed, as well by their charter as by subsequent statutes of the state, with legislative powers, and in the capacity of a local legislature are particularly charged with the care of the public morals and the public health within their jurisdiction.  *  *  *  They had no power as a party to make a contract which should control or embarras their legislative powers and duties." To the same effect is *People* v. *Morris* (13 Wend. 325).

In *Wynehamer* v. *People* (13 N. Y. 421) Judge COMSTOCK says, in speaking of rights of property: "The substantial right cannot be destroyed; its enjoyment is not an offense.  *  *  *  At the same time the mode of enjoyment in its broadest sense, is subject to legislation, though it be affected very injuriously, provided a substantial right is left.

The claim made by the relator in this case would authorize it to tear up the streets of the city at such times, in such places and under such circumstances as it might itself determine, regardless of the public convenience and welfare, and the rights of other claimants to the occupation thereof, and place it beyond the reach of all power by the legislature to regulate the mode and manner of the enjoyment of its rights.

We do not think such a claim can be sustained. It is neither within the terms of its contract, and if it were it is still subject, in the respects mentioned, to the police power of the State.

The order of the General Term should be affirmed, with costs.

All concur.

Order affirmed.