Lawbence, J.
This is a motion upon the part of the plaintiff to continue, -d uring the pendency of the action, an inj unction restraining the defendants, as follows: First, from interfering with or removing any of the plaintiff’s poles, wires, or fixtures in the city of New York; second, from doing any act or acts tending to give to the Metropolitan Telephone Company, the Western Union Telegraph Company, and the East River Electric Light Company, or any other companies, other or greater facilities or privileges than shall be granted to the plaintiff. A thorough examination of the exceedingly voluminous papers read upon this motion has served to ripen into a conviction the impression which I intimated during the argument, that the plaintiff is not entitled to the injunction which is prayed for in the complaint.
It is quite obvious that under the act of 18s7, c. 716, which creates the board of electrical control, the duty and responsibility of determining all questions as to placing, erecting, constructing, suspension, use, regulation, or ‘control of electrical conductors or conduits, or subways for electrical conduct•ors, in the city of New York, are to be determined by said board. See Act, §§ 1, 3,4. By the first section of said act it is provided: “From and after the passage of this act, and until the first day of November, 1890, the board of ■commissioners of electrical subways in and for the city and county of New York, heretofore appointed under authority of the act, chapter 499 of the Laws of 1885, together with the mayor of said city for the time being, are hereby constituted the board of electrical control in and for the city of New *778 York. * * * All the powers and duties conferred or imposed by the said1 act, chapter 499 of the Laws of 1885, upon the commissioners appointed thereunder in and for the city of New York, and all the powers and duties heretofore by any law conferred or imposed upon the local authorities of said city, or any of them, in respect to or affecting the placing, erecting, construction, suspension, maintenance, use, regulation, or control of electrical conduetors- or conduits, or subways for electrical conductors, in said city, are hereby transferred to, and conferred and imposed on, and shall hereafter be exclusively exercised and performed by, the said board of electrical control, constituted as provided in this act, and its successors as hereinafterprovided.” By the third section of said act it is provided: “Whenever, in the opinion of the-board hereinbefore constituted, in any street or locality of said city, a sufficient construction of conduits or subways under-ground shall be made ready-under the provisions of this act, reference being had to the general direction and vicinity of the electrical conductors then in use overhead, the said board-shall notify the owners or operators of the electrical conductors above ground in such street or locality to make such electrical connections in said street, or throngh other streets, localities, or parts of the city, with such under-ground; conduits or subways so specified, as shall be determined by the said board, and to remove poles, wires, or other electrical conductors above ground, and1 their supporting fixtures or other devices, from said street and locality, within ninety days after notice to such effect shall be given. This provision is made-a police regulation in and for the city of New York; and in case the several-owners or operators of such wires, and the owners of such poles, fixtures,, or devices, shall not cause them to be removed from such street or locality, as required by such notice, it shall be the duty of the commissioner of public-works of said city to cause the same to be removed forthwith by the bureau of incumbrances, upon the written order of the mayor of said city to that effect.” By the fourth section of said act it is provided that “it shall be unlawful, after the passage of this act, for any corporation or individual to take-up the pavements of the said streets of said city, or to excavate in any of said streets for the purpose of laying under-ground any electrical conductors, unless a permit in writing therefor shall have been first obtained from the said board, or its predecessor; and, except with, such permission, no electrical conductors, poles, or other figures or devices therefor, nor any wires, shall hereafter be continued, constructed, erected, or maintained, or strung above-ground, in any part of said city. The said board of electrical control may establish, and from time to time may alter, add'to, or amend, all proper or necessary rules, regulations, and provisions for the manner of use and management of the electrical conductors, and of the conduits or subways therefor,, constructed or contemplated under the provisions of this act, or of any act, herein mentioned.
In substance, the court is asked upon this motion to determine that the-opinion which the board of electrical control had formed as to the feasibility of putting the electrical wires.under the streets and avenues specified in the resolution of September 21, 1887, is an erroneous one; and it is asked to substitute its own opinion for that of the board. In other words, the court is asked to override the will of the people, as expressed in the act of 1887, that the board of electrical control shall decide when and where, and in what manner, the wires shall be placed under-ground. On plain principle, this request must be refused. See 2 High.'Inj. pp 813-815, § 1240, where the learned author says: “And no principle of equity jurisprudence is better established than that courts of equity will not sit in review of proceedings of subordinate political or municipal tribunals, and that, where matters are left to the discretion of such bodies, the exercise of that discretion in good faith is conclusive, and will not, in the absence of fraud, be disturbed; and the fact that the court would have exercised the discretion in a different manner will not warrant it *779 in departing from the rule. * * * And where municipal officers are proceeding in the exercise of an unquestioned authority, with the construction, of a work of public convenience, they will not be enjoined, at the suit of a citizen seeking to restrain the work upon the particular plan proposed, upon the ground that another and different plan is superior. Thus the owner of' mills and mill privileges upon a river m an incorporated city will not be permitted to enjoin the city authorities from improving or reconstructing a public-bridge in accordance with a proposed plan, upon the ground that the plan adopted will cause more injury to the complainant’s mills than would otherwise accrue, since the power to make the improvement necessarily implies the-right to determine upon the plan and method of doing it.” See, also, People v. Contracting Board, 27 N. Y. 378-381; Howland v. Eldredge, 43 N. Y. 457; People v. Fairchild, 67 N. Y. 334; People v. Leonard, 74 N. Y. 443; People v. Common Council, 78 N. Y. 33-39. It is essential that the board, in arriving at a determination, should be free to act upon the various plans-submitted to it, untrammeled by the views and opinions of other officers and departments of the government; and no court should intervene for the purpose of retarding, arresting; or preventing the action of the board, except in cases where fraud, or conduct amounting to fraud, is shown. There are allegations in the moving papers which are intended to show that the board of electrical control has been actuated in its proceedings, as respects the plaintiffs, by improper motives; but, after a full consideration of the attacking and replying affidavits, 1 do not think that the charge is sustained. On the contrary, while all charges of fraud or collusion are denied by the defendants, no one, I think, can read the plaintiff’s papers without receiving the impression that the plaintiff has determined from the first not to submit to the orders of the board in respect to the placing of the wires under-ground, unless-some plan was adopted by the board which would be satisfactory primarily, not to the board, but to the plaintiff. So far as the expert testimony is concerned, I deem it sufficient to say that, while the plaintiff has produced the-affidavits of many electricians of undoubted capacity and standing, who are of the opinion that the plan adopted by the board of electrical control is not feasible or practicable, the defendants have read in answer numerous affidavits-from electricians, both practical and theoretical, of equal standing and experience, indorsing and commending that plan. Upon this state of facts the wisdom of the legislature, in confiding to the board the exclusive power to-determine upon a proper plan for placing the electric wires under-ground, is-apparent. See remarks of Huger, O. J., in People v. Squire, 107 N. Y. 605, 14 N. E. Rep. 820.
It was contended upon the argument that the act of 1887 is in conflict with the constitution of this state. Some of the grounds which are urged are the-same as those alleged against the acts of 1884 and 1885, and are disposed of by the decision of the court of appeals in the case of People v. Squire, 107 N. Y. 593, 14 N. E. Rep. 820. Indeed, the opinion of the court in that case is a conclusive answer to most of the points made upon this motion. It is-there decided that the act of 1885 is not in conflict with section 17, art. 3, of the constitution, because it declares that the act of 1884 is amended so as to-conform to the provisions of the act of 1885; the former act not being inserted in the latter. It is also decided that the act of 1885, so-far as it affects-corporations organized before its passage, is not obnoxious to the constitutional prohibition against laws impairing the obligations of contracts; that it does not annul, destroy, or materially impair or restrict, any franchises or contract rights previously secured, but seeks to regulate and control their exercise, so that they shall cease to constitute a public nuisance. At page 603,14 IT. B. Bep. 823, Chief Justice Buger, in delivering the opinion of the court, says: “But we are of the opinion, for other reasons, that this legislation did: not, and was not intended to, materially impair or restrict the enjoyment of- *780 the franchise secured by the relator. The necessity of these acts springs out ■ of a great evil, which in recent times has grown up and afflicted large cities, by the multiplication of rival and competing companies, organized for the purpose of distributing light, heat, water, the transportation of freight and passengers, and facilitating communication between distant points, and which require in their enterprises the occupation, not only of the surface of and air .-above the streets, but indefinite space under-ground. This evil had become so great that every large city was covered with a net-work of cables and wires . attached to poles, houses, buildings, and elevated structures, bringing danger, inconvenience, and annoyance to the public. Extensive spaces under-ground were also required to lay pipes and build trenches and arches to transact the business of the various corporations requiring them. These works not only • called for great skill to harmonize the various and conflicting claims of competing companies to rights above as well as beneath the ground, but a com-prehensive plan and supervision to prevent the constant disruption of the :streets and the interruption of travel. The necessity of a remedy for these public annoyances had long been felt, and it finally culminated in the enactment of the several statutes referred to. These statutes were obviously intended to restrain and control, as far as practicable, the evils alluded to, by requiring all such wires to be placed under-ground in such cities, and be subject to the control and supervision of local officers, who could reconcile and harmonize the claims of conflicting companies, and obviate in some degree the evils which had grown to be almost, if not quite, intolerable to the pub-lic. The scheme of these statutes was not to annul or destroy the contract rights of such companies, but to regulate and control their exercise. They -did not purport to deny them any privileges theretofore granted, but they did require that they should be exercised with due regard to the claims of others, • and in such a way that they should cease to constitute a public nuisance, and should be enjoyed in such a manner as to inconvenience and endanger the general public as little as possible.”
The act of 1887 was not considered by the court of appeals in People v. ■ Squire, but the reasoning, which goes to show that the former acts were not unconstitutional, íe¡ equally forcible to sustain the validity of the latter act. Precisely why the plaintiff in this case can challenge the nnconstitutionality -of the act of 1887, because it seeks to validate the contract theretofore made by the subway commissioners, I do not understand. It was competent for the legislature, in the first instance, to have authorized the subway commissioners to make the contract in question; and it seems to me that, if the - contract was beyond the power of the commissioners when made, the legislature could afterwards affirm and ratify it. Brown v. Mayor, etc., 63 N. Y. 244, and cases cited. If, however, there is any reason for doubting that the ■ act of 1887 is constitutional, the doubt is so remote, that a justice, sitting at ■ chambers, would not, upon well-established authorities, be justified in enter- • taining it. In re Railroad Co., 70 N Y 342. In that case Eabl, J., referring to certain constitutional objections to the general rapid transit act, says: “In considering them we must keep in view the salutary rule, often reiterated, that nothing but a clear violation of the constitution will justify a court in • overruling the legislative will. Every statute is presumed to be constitutional, and every intendment is in favor of its validity,” See also Thompson v. Commissioners, 2 Abb. Pr. 248; Electric Lines Co. v. Crimmins, N. Y. Super. Ct., opinion Fbeedman, J.; In re Lexington Avenue, 63 How. Pr. 462; People v Tweed, 63 N. Y. 206.
It is further contended by the plaintiff that an unjust discrimination is being ma'de by the board of electrical control between the plaintiff and other ■companies engaged in the business of electric lighting in the city of 27ew York. The allegations to that effect in the plaintiff’s affidavits, I am constrained to say, are, in my opinion, fully met and answered; but if they are *781 not, the remedy of the plaintiff is not by injunction. Section 7 of the act of' 1887 provides for such a case, and by that section, if the plaintiff is aggrieved,, it can by mandamus compel the board to “furnish just and equal facilities” to it, and obtain precisely the same rights as any other corporation or corporations. It is not necessary, to obtain these rights, that an injunction should be granted to the plaintiff, which may entirely thwart all the efforts of the-board in the matter of putting the electric wires under-ground.
There is nothing in the motion to punish the defendants for contempt which calls for particular observation. The affidavits of the defendants explain, as-I think, very satisfactorily, the acts which are alleged to have been in violation of the injunction and of the plaintiff’s rights, and do not, as thus explained, call for the condemnation of the court.
Finally, I am of the opinion that the whole equity of the plaintiff’s case is-met, denied, and answered by the defendant’s papers, and I therefore see no reason for interposing the strong arm of the court to arrest the progress of a great public work, the speedy completion of which is desirable for the safety and convenience of the people.