The City of New York, Respondent, v. The Woodhaven Gas Light Company, Appellant. (Action No. 2.)

Second Department, December 21, 1917.

**Municipal corporations — city of New York — authority of city to regulate use of franchise by gas company.**

The right to regulate the use of a franchise by a gas light company is not exhausted by the regulations prescribed by the municipal authorities of the city of New York at the time of granting the consent which conferred the franchise.

Under the provisions of the Greater New York charter, the commissioner of water supply, gas and electricity has full jurisdiction, charge and control of the transmission of gas by pipes and conduits, which includes the locating of the pipes and prescribing the dimensions of the mains and filing maps and plans with the department, but he has no legislative authority to compel a gas company to pay inspectors appointed by him as a condition of allowing it a permit to install conduits and pipes for the use and transmission of gas.

The Legislature may, however, compel public service corporations to pay the expenses of public regulation.

Appeal by the defendant, The Woodhaven Gas Light Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 7th day of May, 1917, pursuant to the direction of the court made upon a motion for judgment on the pleadings.

The judgment forever enjoined the defendant from further opening the public streets of the city and from further installing therein conduits and pipes for the use and transmission of gas, unless the defendant applies for, accepts and abides by the terms of a permit in writing from the commissioner of water supply, gas and electricity, embodying reasonable regulations, including a provision for the inspection of the work by inspectors to be appointed by the commissioner and employed at an expense to the defendant of $100 a month.

*Jackson A. Dykman,* for the appellant.

*William E. C. Mayer* [*Lamar Hardy, Corporation Counsel, Terence Farley* and *Edward S. Malone* with him on the brief], for the respondent.

BLACKMAR, J.:

The provisions of section 61 of the Transportation Corporations Law (Consol. Laws, chap. 63; Laws of 1909, chap. 219) authorize a corporation duly organized for the purpose of supplying gas for light to lay conductors through the streets of a city, with the consent of the municipal authorities thereof, and under such reasonable regulations as they may prescribe. In the city of New York the municipal authorities were held in *Ghee* v. *Northern Union Gas Co.* (158 N. Y. 510) to be the municipal assembly. The reasonable regulations were to be annexed to the consent and thereupon become an integral part of the franchise so granted. (*Parfitt* v. *Furguson,* 159 N. Y. 111.) The appellant claims that such regulations prescribed under the authority of the Transportation Corporations Law are exclusive of all others, and that the power to prescribe such rules, once exercised, is exhausted.

But the right to regulate the use of the franchise for the public good is part of the police power of the State, which is not exhausted when regulations are prescribed as a condition to the consent which operates to convey the franchise from the State to the corporation. As was said by Chief Judge RUGER in *People ex rel. New York Elec. Lines Co.* v. *Squire* (107 N. Y. 606): " The right to exercise this power cannot be alienated, surrendered or abridged by the Legislature by any grant, contract or delegation whatsoever, because it constitutes the exercise of a governmental function, without which it would become powerless to protect those rights which it was especially designed to accomplish." The right, therefore, to regulate the use of defendant's franchise is not exhausted by the regulations prescribed by the municipal authorities at the time of granting the consent which conferred the franchise.

The distinction between those general regulations prescribed by the municipal authorities which govern the exercise of the franchise during its life, and those which may from time to time be prescribed as occasion requires, is suggested by Chief Judge PARKER in the *Ghee* case (pp. 522, 523) in the following words: " It is necessary that some administrative officer have the authority to determine on which side or in which portion of a street gas pipes shall be laid when the

authority to lay them has been conferred by the granting of a franchise for that purpose, as well as to determine, when the pipes are being laid, how much of the street shall be torn up and left open at any one time, the most effective method of restoring the street to its former condition and other details of the work, all of which are of no small importance in many of the streets of a great city like New York."

The sub-surface of streets in the city is enmeshed by a maze of sewers, subways, electrical conduits, water and gas mains, electrical conductors for trolley cars and other agencies, many of them installed under privately owned franchises. Some of the franchises were granted many years ago, in times of primitive simple conditions, under regulations prescribed by the municipal authorities. To hold that the city has no continuous control over the installation of these agencies, as conditions may change, would result in inextricable confusion. That the Legislature has power to authorize such control is too well settled to need further discussion. This case turns on the question whether the Legislature has authorized such control, and, if it has, upon what department or departments of the city it is conferred.

Section 383 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1907, chap. 383) declares that the president of a borough shall have cognizance and control of the issue of permits to use or open the streets. The language is general, and broad enough to cover any purpose for which the streets may be opened. This grant of authority may be limited by the grant of specific power of the same kind elsewhere. So section 528 gives to the commissioner of water supply, gas and electricity power, with the written approval of the president of the borough, to grant permits to take up the pavement and to excavate for the purpose of laying underground electrical conductors, or of constructing subways or of erecting poles. But the power thus granted to the commissioner is confined to opening streets for the purpose of electrical transmission, and we find no authority granted to him, either with or without the approval of the president of a borough, to permit opening the streets for gas pipes. Section 469 does not grant such

power. The section, as amended by chapter 602 of the Laws of 1916, or so much as is relevant to this inquiry, reads as follows:

" § 469. The commissioner of water supply, gas and electricity shall have jurisdiction, charge and control:   *   *   *

" 5. Of the making and performance of contracts when duly authorized in accord with the provisions of this act, and for the execution of the same in the matter of furnishing the city, or any part thereof, with gas, electricity or any other illuminant or of steam; of the selecting, locating and removing and changing of lights for the use of the city; of the inspecting and testing of gas and electricity used for light, heating and power purposes, electric meters, electric wires and of all lights furnished to said city; and of the use and transmission of gas, electricity, pneumatic power and steam for all purposes in, upon, across, over and under all streets, roads, avenues, parks, public places and public buildings; of the construction of electric mains, conduits, conductors and subways in any such streets, roads, avenues, parks and public places, and the granting of the permission to open streets, when approved by the borough president, and to open the same for the purpose of carrying on therein the business of transmitting, conducting, using and selling electricity, steam or for the service of pneumatic tubes."

The power so conferred on the commissioner to grant permits to open streets when approved by the borough president, and to open the same, is confined to the transmission of electricity, steam, or for the service of pneumatic tubes. This is the plain reading of the written words. But, in addition thereto, he is given jurisdiction, charge and control of the use and transmission of gas through and under the streets. These words must be given a reasonable significance. It is too narrow to confine the jurisdiction, charge and control over transmission to prescribing the pressure which effects the transmission, for that matter is governed by another section (§ 522, as amd. by Laws of 1905, chap. 735). We think that the commissioner has no power to permit the opening of the street nor to regulate the relaying of the pavement, for these functions are vested in the president of the borough; but that he has full jurisdiction, charge and

. control of the transmission of gas by pipes and conduits. This, we think, embraces among other things the locating of . the pipes and prescribing of the dimensions of the mains, and filing maps and plans with the department.

The real, vital question in this case is, whether the court shall forbid the work to proceed unless the defendant will agree to pay inspectors appointed by the commissioner at the rate of $100 per month. It may be that performance of the duties cast on the commissioner by law requires the aid of inspectors to supervise the work, but we cannot find, anywhere, statutory authority to impose the charge on the gas company; nor can we imagine any principle which warrants the commissioner in shifting upon the defendant, without legislative authority, any portion of the expense of performing his duties. We are confirmed in our view by the fact that the Legislature has apparently considered it necessary to confer on the president of a borough authority to require payment of the expense of inspection as a condition to granting a permit to open the street for, among other purposes, laying down gas pipes. (Greater N. Y. Charter, § 391, as amd. by Laws of 1916, chap. 496.) We do not doubt the power of the Legislature to compel public service corporations to pay the expense of public regulation; but, unless conferred by statute, the power does not exist in the city government or any department or official thereof. The decision in *People ex rel. Consolidated Subway Co.* v. *Monroe* (85 App. Div. 542) is not opposed to this view, for in that case the relator was under a contract made with the board of commissioners of electrical subways, to which the commissioner of water supply, gas and electricity was successor, which bound the relator to pay all reasonable expenses of inspection, and which contract was confirmed by statute (Laws of 1887, chap. 716, § 6).

The judgment should be reversed and a new trial granted, with costs of this appeal and disbursements to be paid by plaintiff.

JENKS, P. J., STAPLETON, RICH and PUTNAM, JJ., concurred.

Judgment reversed and new trial granted, with costs of this appeal and disbursements to be paid by plaintiff.