OPINION OF THE COURT
Ciparick, J.
On July 18, 1990, the State Legislature enacted Public *450 Health Law § 19 (L 1990, ch 572) to prevent physicians from charging Medicare beneficiaries excessive amounts via "balance billing,” the billing option whereby physicians may directly bill beneficiaries amounts in excess of Medicare’s approved rates for covered services. In this combined CPLR article 78 proceeding and declaratory judgment action, appellants, Medical Society of the State of New York et al., contend that Public Health Law § 19 became unenforceable after January 1, 1992, the effective date of certain amendments to the Medicare Act which changed the methodology used to calculate Medicare rates. Appellants further contend that section 19 violates the proscription against incorporation by reference contained in article III, § 16 of the State Constitution.
I.
In 1965, Congress enacted the "Federal Health Insurance for the Aged and Disabled” program, more commonly known as the Medicare program (42 USC § 1395 et seq.). Part A covers those services provided by institutions such as hospitals (42 USC §§ 1395c — 1395Í-4). Part B provides supplemental medical insurance benefits for certain health care, including physician services (42 USC §§ 1395j — 1395w-4). From 1965 through 1991, physician reimbursement under part B was based on the "reasonable charge” for the service provided (42 USC § 1395u), determined by reference to the lowest of the physician’s actual charge, customary charge, or the prevailing charge in the community (42 USC § 1395u [b] [3]).
As part of the Omnibus Budget Reconciliation Act of 1989, Congress changed the rules for physician reimbursement. Effective January 1, 1992, the United States Department of Health and Human Services (HHS) adopted a fee schedule based on a resource-based relative value scale (RBRVS) (42 USC § 1395w-4). The RBRVS fee schedule is based on the Government’s estimate of the resources expended by a doctor in performing a particular service or procedure.
Public Health Law § 19 was intended to limit the charges made by physicians who "balance bill” Federal Medicare beneficiaries. Medicare typically covers 80% of the reasonable charge for services provided by a physician. Two billing methods are available under the Medicare Act. The first method, known as "balance billing,” permits a physician to directly bill a beneficiary an amount in excess of the reasonable *451 charge, with a local carrier reimbursing the beneficiary for 80% of the reasonable charge and the patient responsible for the balance. The second, or "assignment” method, limits a doctor’s fee to the reasonable charge. The local carrier directly reimburses the physician for 80% and the beneficiary pays the remaining 20%.
Balance billing was originally intended to provide a safety valve for those physicians who believed that the Federal fee schedule did not adequately reflect the quality of services provided by them. However, growing concern for the increased use of balance billing and for the corresponding increase in out-of-pocket liabilities to Medicare beneficiaries led to the Legislature’s enactment of Public Health Law § 19 (see, Mem of Assemblyman Harenberg, 1990 NY Legis Ann, at 287).
Section 19 places percentage caps on the amount above the Federal reasonable charge a physician may demand. Effective January 1, 1991, "a physician’s charge shall not exceed [115%] of the reasonable charge for that service as determined by the [HHS]” (Public Health Law § 19 [1] [a]). In 1993, the cap on fees above the Federal reasonable charge was to be reduced to 10%, or 5% if the number of State-wide Medicare claims billed at or below Medicare’s recognized payment amount did not increase by 5% from the preceding year’s level. The statute also subjects overcharging physicians to fines and requires them to refund excess fees collected.
II.
Petitioners, a not-for-profit medical society and two individual physicians, argue that Public Health Law § 19 became unenforceable as of January 1, 1992, when HHS stopped using the "reasonable charge” method and implemented the RBRVS fee schedule. Petitioners contend that the Legislature, in using the term "reasonable charge,” was referring to the specific methodology used since the inception of the Medicare program, and that the Legislature did not intend section 19’s fee caps to survive expiration of Medicare’s "reasonable charge” system.
Acceptance of petitioner’s argument leads to the conclusion that the Legislature, on July 18, 1990, enacted section 19 with the knowledge that it would become meaningless as of January 1, 1992. Such an interpretation leads to a patently absurd result that contravenes basic principles of statutory construction (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 141 *452 ["the construction to be adopted is the one which will not cause objectionable results, or cause inconvenience * * * or absurdity”]).
The Legislature’s purpose in enacting section 19 was to prevent physicians who use balance billing "from charging medicare beneficiaries excessive amounts for certain services” (Governor’s Approval Mem, 1990 NY Legis Ann, at 288). The Legislature was aware that the "reasonable charge” system would be discontinued as of January 1, 1992. Nevertheless, it enacted section 19 in the contemplation that the statute would operate in conjunction with "the strong provisions of the Federal Omnibus Reconciliation Act of 1989” to increase the number of "fully participating physicians” who, rather than balance bill, would accept the "reasonable rate as full payment for all services for all Medicare patients” (id., at 288). Thus, a far more rational construction of the statute at issue is that the term "reasonable charge” was used by the Legislature to refer to Medicare’s recognized, reasonable payment amount as determined by HHS, irrespective of the particular methodology employed to calculate that amount. Such a construction accords with the Legislature’s purpose in enacting section 19. As the Appellate Division aptly noted, "to interpret the statute in any other fashion would frustrate the clear intent of the Legislature and lead to an absurd result” (189 AD2d 453, 456).
III.
The second issue raised is whether Public Health Law § 19 violates the proscription against legislative incorporation by reference contained in article III, § 16 of the State Constitution. Petitioners argue that if Public Health Law § 19 is construed to apply to the RBRVS system, then it must be struck down as unconstitutional for incorporating by reference a future amendment to the Medicare Act.
Article III, § 16 provides: "No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act”.
Incorporation by reference is not prohibited in all instances. The purpose of the constitutional prohibition against incorporation by reference is to prevent the Legislature from incorporating into its acts the provisions of other statutes or regula *453 tians which affect public or private interests in ways not disclosed upon the face of the act, and which would not have received the sanction of the Legislature if fully understood by it (People ex rel. Board of Commrs. v Banks, 67 NY 568, 576; see, People ex rel. Everson v Lorillard, 135 NY 285, 291; North Shore Child Guidance Assn. v Incorporated Vil. of E. Hills, 110 AD2d 826, 829). In Everson (135 NY, at 288, supra), this Court noted the potential for a significant restraint on legislative power and stressed that the constitutional proscription was not to be construed to embrace cases "not fairly within its general purpose or policy, or the evils which it was intended to correct, though they may be within its letter”. Clearly, the evil in view in adopting article III, § 16 was the possibility of legislative misapprehension or unawareness (see, People ex rel. New York Elec. Lines Co. v Squire, 107 NY 593, 602 ["all acts should contain within themselves such information as should be necessary to enable (the Legislature) to act upon them intelligently and discreetly”]; Banks, 67 NY, at 575, supra). Stated otherwise, the evil intended to be corrected is the enactment of affirmative legislation, "the nature of which is explained only by reference instead of actually set forth” (Brandt v City of New York, 172 Misc 988, 990, affd 260 App Div 911). Accordingly, courts have construed article III, § 16 to apply in those limited instances where the incorporation by reference results in the creation of substantive obligations or requirements (see, City of New York v State of New York, 40 NY2d 659, 664; People v Gholston, 130 AD2d 843; North Shore, 110 AD2d, at 829, supra).
Thus, where a statute creates rights or duties, or imposes burdens, and the provisions of another statute are referred to as a means of formally executing the provisions of the first statute, the constitutional proscription is not violated (see, e.g., Knapp v Fasbender, 1 NY2d 212, 234; Everson, 135 NY, at 290, supra [it is not necessary for every statute to "contain within itself every detail necessary to its complete execution”]).
We perceive in Public Health Law § 19 no unconstitutional incorporation by reference. Section 19 simply caps the amount a physician licensed in New York may charge for a specific medical service to a fixed percentage above the patient’s Medicare coverage. Thus, although section 19’s imposition of fee restrictions is effectuated by reference to the Federally recognized payment amount, the statute is otherwise complete and contains all the information required for intelligent and discrete action by the Legislature. Indeed, the *454 legislative history surrounding Public Health Law § 19 reveals the Legislature’s awareness of the impending changes in the Medicare Act, so no consequences were unforeseen or overlooked when the challenged statute was enacted. Finally, the statute simply does not incorporate any new substantive requirements or obligations. As we stated above, the Legislature, in enacting section 19, was concerned with capping the amount above Medicare’s recognized payment schedule for physicians’ services to Medicare beneficiaries — irrespective of the particulars involved in calculating that amount.
In sum, Public Health Law § 19 violates neither the letter nor the spirit of article III, § 16, as no danger exists that the Legislature was unable to comprehend its meaning and consequences.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Bellacosa, Smith and Levine concur; Judge Titone taking no part.
Order affirmed, with costs.